UNITED STATES, Appellee

v

THORNTON L. BLAIR, Electrician's Mate Fireman Recruit,
U. S. Navy, Appellant

16 USCMA 257, 36 CMR 413

No. 19,194

June 10, 1966

Major Brian B. Kent, USMC, argued the cause for Appellant, Accused.
Lieutenant Robert A. Briggs, USNR, argued the cause for Appellee,
United States. With him on the brief was Colonel J. E. Hanthorn, USMC.

FERGUSON, Judge:

A Navy special court-martial convicted the accused of disrespect toward his superior petty officer, in violation of Uniform Code of Military Justice, Article 91, 10 USC § 891; escape from confinement, in violation of Code, supra, Article 95, 10 USC § 895; and two specifications of assault, in violation of Code, supra, Article 128, 10 USC § 928. He was sentenced to bad-conduct discharge, forfeiture of $55.00 per month for four months, and confinement at hard labor for a like period. The convening authority, reducing the findings of guilty of escape to an attempted escape, nevertheless approved the sentence. The supervisory authority and the board of review affirmed. We granted accused's petition for review on the following issues, specified by the Court:

"1. Whether the president was required to cover the defense theory of fleeing from an assault (R. 110) in regard to Charge I.

"2. Whether it was prejudicial in instructing on self-defense to use 'retreat' and 'like degree of force' (R. 150)."

I

The evidence in the case is in hopeless conflict. According to the prosecution witnesses—who themselves did not always agree as to what transpired—accused, a prisoner in the ship's brig, refused to take a shower and was returned to his cell. When he became vocal in his opinions as to the restraints placed over him and the demeanor of his Marine guards, a more experienced guard was assigned to replace the sentry normally having the duty. When this sentinel, one Moore, remonstrated with the accused for his rebellious attitude, accused struck out at him. They engaged in a struggle, were separated by the former sentry, and accused fled from his cell toward the office of the Commanding Officer of the Marine Detachment. He was immediately pursued and apprehended near that office. According to Moore, at this point, accused was released and was wandering aimlessly around the corridor. He suddenly seized a dog wrench from the bulkhead and advanced on Moore, with the wrench lifted as if to strike him. Moore obtained a nightstick and struck accused on the arm, forcing him to drop the wrench. Thereafter, accused was marched to the dispensary.

Upon Blair's entry into the dispensary, he fell to the floor and crawled around, in an emotionally disturbed condition. At the time, he was bleeding from the nose and mouth. The Marine guards surrounded him and attempted to persuade him verbally to arise and submit to medical treatment for his injuries. Accused suddenly arose and, without any provocation, struck a Marine in the face with his fist. He was thereafter physically subdued by the guards and treated for his injuries.

The accused's version of the incident, supported in part by testimony of other witnesses, is somewhat different. He alleged that he had been harassed by the Marine guards since being confined in the brig. On the evening in question, he was ordered to take a shower while wearing his newly-shined shoes as he had left his shower clogs in his cell. He refused to do so and was eventually returned to the cell. As he was placing his clothing in order, Moore entered the cell, relieved the guard, and informed him that, before he left the cell, "one of them was going down." Moore then struck him several times and kicked him. The other guard intervened, but Moore attempted to continue his assault. Thereupon, the accused fled from his cell in order to secure aid from the Commanding Officer of the Marine Detachment. He was apprehended in the passageway. After Moore came up and participated in his capture, accused seized the dog wrench from the bulkhead, as he was frightened. He intended to strike Moore, but changed his mind, and replaced the wrench. Moore then struck him several times with a nightstick. He was ordered to go to the dispensary and, although he did so, he was struck several times by

Moore en route. The accused did not testify as to what transpired in the dispensary.

At the conclusion of the case, defense counsel unsuccessfully sought the following instruction from the president of the court-martial:

"If you find the accused was assaulted or that the actions of the brig guards were unlawful, you may fairly find that the accused was justified in running from the brig in order to protect himself from further unlawful assaults."

The president, however, instructed the court members regarding the principles of self-defense in connection with accused's claim that his use of force against Moore was premised on his fear of a further unlawful attack upon him. Nevertheless, he conditioned the accused's use of force likely to result in grievous bodily harm upon his ability to retreat and declared that, otherwise, he "could meet force with a like degree of force in order to protect himself."

## II

The first issue before us involves the failure of the president to grant the defense proposed instruction regarding the propriety of the accused throwing off the restraint placed over him and fleeing his cell in order to seek the assistance of the Commanding Officer of the Marine Detachment, and allegedly protect his person from further unlawful attacks by his guards. As to this question, the Government concedes error; affirmatively notes the matter was in issue and should have been the subject of advice to the court members; and does not contest the defense contention that lack of such instructions was prejudicial. The concession is well-founded. See United States v Fleming, 7 USCMA 543, 23 CMR 7; United States v Apple, 2 USCMA 592, 10 CMR 90. Cf. United States v Acosta-Vargas, 13 USCMA 388, 32 CMR 388. Thus, the findings of guilty of attempted escape from confinement must be set aside.

The United States likewise concedes the president's instructions on self-defense were erroneous. See United States v Smith, 13 USCMA 471, 33 CMR 3; United States v Acosta-Vargas, supra; and United States v Green, 13 USCMA 545, 33 CMR 77. It urges, however, that the error could not have been prejudicial, for self-defense was not placed in issue with respect either to the alleged assault by the accused on Moore in the passageway or the striking of the other Marine in the dispensary.

In so concluding regarding the transaction between Moore and the accused, the Government overlooks the testimony regarding the earlier unprovoked assault by Moore upon the accused; the latter's testimony that Moore had him under restraint in the passageway and released him; and that he brandished the dog wrench because he feared Moore's renewal of the previous assault. It is not our function to weigh the differing versions of the incident as presented in the record and determine where the truth lies. United States v Black, 12 USCMA 571, 31 CMR 157. And, as we noted in United States v Acosta-Vargas, supra, "a guard or policeman may not use his position as a shield for unwarranted abuse or other unjustifiable treatment of those under his charge; even a prisoner is entitled, under appropriate circumstances, to resort to force in self-defense." Id., at page 391. Accused's testimony makes out those "appropriate circumstances," and we find self-defense to have been placed in issue with regard to the assault on Moore in the passageway.

The Government's argument, however, is correct with respect to the alleged assault on the other guard in the dispensary. The record presents only one version of the events which transpired at that place. Thus, it is indicated the accused was conducted to the dispensary for treatment of the injuries which he had earlier received. Of his own accord, he fell on the floor and crawled around the room in a highly emotional state. There is no allegation or claim that a single person sought to harm him or use force in any way

against him. Indeed, all sought verbally to persuade him to arise and submit to the medical treatment necessary for his wounds. Instead, he lunged from the floor and struck one of the Marines involved in the face. In short, at this point, the earlier matter in the passageway had been terminated; there is absolutely no basis in the record to indicate any reason for the accused to have acted in defense of his person or to establish that his attack on this guard was in any manner justified or excused. Cf. United States v Green, supra; United States v Acosta-Vargas, supra. Hence, it cannot be said there was any prejudice to him, concerning this specification, from the advice on self-defense.

In sum, then, and in light of the Government's concessions of error, as well as our finding self-defense to have been in issue regarding the alleged assault on Moore, it is necessary to set aside the findings of guilty with respect to such assault and the attempted escape from confinement. The count alleging assault upon the Marine in the dispensary and that regarding disrespectful behavior to a superior petty officer on another occasion are not here involved. Hence, the findings of guilty with respect thereto may be, and are hereby, affirmed.

The findings of guilty with respect to Charge I and its specification and specification 1 of Charge II are set aside. The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Navy. The board may reassess the sentence on the basis of the remaining findings of guilty, or direct a rehearing.

Chief Judge QUINN and Judge KILDAY concur.