PARKER, Judge.
The state appeals from pretrial orders suppressing statements which the defendant Brown made to police and evidence obtained as a result of those statements. After a review of the facts presented to the trial court and set out below, I can find no action by the police in this case which merits suppression of the challenged statements or evidence. Because Judge Hall specially concurs in that conclusion, the orders entered below are reversed.
Two arrest warrants were issued in Manatee County for Barry Brown, an eighteen-year-old, for attempted second-degree murder and aggravated assault. The affi-ant on the complaints was Palmetto Police Officer Layhew, who swore he had verbal, sworn, written, and taped statements from witnesses who could identify Brown as having committed these crimes. The day following the issuance of the warrants, Lay-hew proceeded with the warrants to Lakewood High School in St. Petersburg, Pinel-las County, to arrest Brown, who was a student at the high school. When Layhew arrived at the school, he contacted the school resource officer, who was a sworn and certified police officer in Pinellas County, for the purpose of executing the warrants against Brown. Brown was brought to an office at the school, at which time Layhew requested that Brown accompany him to the Palmetto Police Department for questioning on these offenses.
Initially, Brown agreed to go with Lay-hew, but then hesitated and inquired of the consequences if he refused. Layhew advised Brown that he had warrants for his arrest and that he would be arrested if he refused to go with him, but that “it would look better for him if he did come down on his own.” At the suppression hearing, Layhew testified that the school resource officer was available to serve the arrest warrants if necessary. Brown of his own accord, however, assented to accompany Layhew, and the warrants were not served.* Layhew testified further that if Brown had tried to leave, Brown would have been arrested.
Someone at the school telephoned Brown’s mother to inform her that an officer from Manatee County was at the school to arrest Brown. Layhew placed Brown in the patrol car and was driving Brown to Manatee County when Brown’s mother intercepted the officer’s car and attempted to speak with Brown. Layhew advised her that he was transporting Brown to the Palmetto Police Department and then proceeded to the station. Once Brown arrived at the station, he provided two taped statements to the officers wherein he confessed to the crimes. Before each statement, Brown was read his Miranda warnings, and in each instance, he responded affirmatively when asked if he understood those rights. Brown’s attorney conceded at the motion hearing “we do not contest he was read his Miranda warnings and that he waived his Miranda rights.” Layhew testified no threats or promises were made to Brown in order to obtain the statements.
Brown was formally arrested after the interviews were completed. In his statements to the police, Brown informed the officers that the gun, which he had used in the shooting, was located at Brown’s residence. Once at the station, Brown’s mother was permitted to communicate with Brown following the questioning. At the request of Layhew, Palmetto Officer Le-Gasse followed Brown’s mother from the station to her residence in order to recover the pistol from her and Brown’s apartment. Before entering the residence, LeGasse asked Brown’s mother to sign a consent to search form for the purpose of retrieving the gun, which she did evidently without reading it. The officer proceeded directly to Brown’s bedroom, removed the pistol from under the mattress, and left. At the time, Brown’s mother raised no objection to the officer’s entry into the apartment to obtain the gun. The testimony at the suppression hearing revealed that only Brown and his mother resided at the apartment, and the mother paid all the household ex *1056 penses. Although the mother stated Brown liked his privacy and took care of his room, the mother would enter his room occasionally with his laundry.
In its order suppressing Brown’s statements, the trial court ruled that all statements, admissions, or confessions made by Brown to Palmetto police officers were obtained through coercive and improper methods in violation of Brown’s rights under the United States Constitution. The trial court further ordered that those statements made by Brown could not be used against Brown for impeachment purposes at a trial on these charges.
The trial judge offered the following explanation at the hearing for his decision to suppress the statements:
It’s clear to me from the facts that had the defendant been arrested, that the Palmetto Police Department never would have had obtained the statements from the defendant, because if I understand police procedure correctly, the School Resource Officer would have taken the defendant to the Pinellas County jail, he would have been booked, and I think the defendant eventually posted bond on this, and I assume the defendant would have posted bond in Pinellas County, and that would have been the end of it.
[[Image here]]
Misrepresentation in this case I think occurred for the following reasons: First, when you explain something to somebody and you have the upper hand — and I think having the upper hand is twofold here; one, is you’re a police officer with obviously more authority than the person you’re talking to; and, two, you’re armed with two orders of the court that say I can arrest you — I think when you talk to somebody, you have to make complete representations, and that is, that the officer should have said to Mr. Brown that he did not have to come with him; that if he didn’t come with him, he would be arrested, that he would be taken to the Pinellas County jail and booked. And that would have been the procedure. They also should have told him that if he didn’t come with them voluntarily, that they still would have executed the arrest warrants when they got to Manatee County. That’s exactly what happened. In other words, the entire story should have been told to Mr. Brown at the time.
I think the coercion comes very clearly to me at the point where the officer is not fully telling the story. Whether or not Mr. Brown comes with him voluntarily at that point is really kind of obviated by the lack of telling the whole story. Mr. Brown’s statement that he will come voluntarily at that point doesn’t mean anything. I don’t think he came with him voluntarily at that point. I think at that point he was not with them voluntarily.
The one thing about the mother’s involvement that is highly critical, I think is when she stops the car. If he was not in detention at that point, then the officer should have said, well, ma’am he can go with you. But they didn’t. In fact, they didn’t even offer to do that. They said they had to take him to Palmetto.
... And certainly I think at the time that there was some misrepresentation made, it can be said and found by the court that Mr. Brown was being unlawfully detained and taken back to Palmetto. Whatever happened after that, I think makes whatever he said to them later involuntarily stated. There was no chance for him at that point, I think to overcome that. He was in the custody of the Palmetto Police Department, effectively, from the time he left Lakewood High School. Therefore, none of the statements can be allowed. The court will grant the motion.
The trial judge entered a separate order suppressing the firearm found in Brown’s bedroom. The judge’s rationale for that ruling is set out below:
I do think that the mother has the right to consent to the search of the apartment under the facts of this case.
My biggest concern about the way this was done is that it seems to me that the officers are trying to move very fast. I agree with Mr. Slater [defense counsel], *1057 that a version of these facts is that they were trying to do it before they had to arrest Mr. Brown. I think there was a point in time that they couldn’t go by, that the longer they detained him, the worse it got, and they had to arrest him at some point.
[[Image here]]
But I think that the crucial thing occurs, and is required constitutionally to occur at the time the officers are about to enter. Assuming for the moment that Layhew had explained it to her, that wasn’t the point. The point was that when LaGasse [sic] was about to enter the apartment, at that point I think constitutionally he was required to tell her what her options were, and specifically, if he was asking her to sign a form, should have gone over the form with her.
By not doing that, I think it’s clear that he violated the provisions that he had, to tell her that she had the right to refuse consent and what that meant.
And I think even though the cases say they don’t have to go beyond that, I think if you note in that case that the State cited to me, if there is any question about it at all, the better practice, the good faith practice for the officers is to fully explain what the circumstances are both ways. And I think in that case, you have — that the whole purpose about consent is that the person fully understands what they’re faced with, and knowing that, freely and voluntarily gives up constitutional rights. And I don’t think anybody can really do that unless they fully know what’s going on.
Certainly at the time that this occurred, from Mrs. Brown’s own testimony, on both faces of these motions, she didn’t know what was going on with her son. She didn’t know why he was being held, whether he was under arrest or not. He certainly hadn’t been released.
And I’m not so sure that there wasn’t some coercion used as to her while she was at the Palmetto Police Department to get her now to go back to St. Peters-burg to search the house. I don’t have enough evidence there to indicate that, but it seems to me that by not telling her what’s going on and making her stay there for a period of time, that that creates in her mind some kind of fear of the consequences.
These reasons offered by the trial judge for his rulings I find to be based upon mere guesses and suppositions and are without legal basis to suppress evidence and statements which were obtained legally under what could be characterized as good, sound police procedure. While I understand that I must accord deference to the trial court’s findings, those findings are wholly without basis in the record. As I interpret the trial court’s order, Brown’s admissions to the crimes are inadmissible because they were obtained by coercion and improper methods. I cannot find any evidence of coercion on the part of Layhew or other Manatee police officers involved in the interrogation of Brown. The facts show that no threats or promises were made to Brown by the officers and that before each statement, Brown was read Miranda, to which he admitted understanding.
The defense, although admitting Miranda was properly administered to Brown, nonetheless, argued the admission was involuntarily obtained through fraudulent inducement or misrepresentation. This argument is not supported by the evidence. The only representation Layhew made to Brown was that if Brown did not accompany Layhew to Palmetto, he would be arrested by the school resource officer. That representation was true and falls far short of any improper inducement. Not only could the resource officer properly execute the arrest warrants against Brown, but also, as explained below, Lay-hew legally could have arrested Brown under a citizen’s arrest theory.
In the trial judge’s view, coercion occurred when Layhew failed to inform Brown fully that Layhew was without authority to execute the warrants in Pinellas County. The trial court’s emphasis upon the fact that Layhew did not inform Brown that he was free to leave or refuse to accompany him to the station is misplaced. *1058 The United States Constitution does not impose such an obligation of full disclosure upon law enforcement. Cf. Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 863 (1973) (prosecution not required to demonstrate knowledge by defendant of his right to, refuse search of vehicle to establish voluntary consent to search).
In any event, Brown was not actually free to leave because had Brown refused to accompany Layhew, the resource officer at the school would have served the warrants on Brown, after which Brown properly could be subject to questioning by Lay-hew at the Pinellas County jail or police station. By virtue of the fact that Brown was made aware by Layhew that he was not free to leave at that point, Brown was effectively under arrest. See Bostick v. State, 554 So.2d 1153, 1155 (Fla.1989) (citing United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980)). Although the legality of the arrest was raised in Brown’s motion to suppress statements, that issue was never argued to the trial court, and contrary to the dissent's view, the order suppressing the statements does not decide that question. Were that issue before us, I would uphold the arrest as a proper citizen’s arrest under Phoenix v. State, 455 So.2d 1024 (Fla.1984). The supreme court in Phoenix explained,
A private citizen does have the common law right to arrest a person who commits a felony in his presence, or to arrest a person where a felony has been committed, and where the arresting citizen has probable cause to believe, and does believe, the person arrested to be guilty. Even though there was time to obtain a warrant, a private citizen may make such an arrest and justify, his failure to obtain a warrant by proving the person arrested was actually guilty of a felony. (Citations omitted.)
Common sense dictates that law enforcement officials, when they are outside their jurisdictions, should not be any less capable, by virtue of their position, of making a felony arrest than a private citizen. But because there are jurisdictional limitations on law enforcement officials’ ability to make arrests, neither should they have any greater power of arrest outside their jurisdiction than private citizens. Schachter v. State, 338 So.2d 269 (Fla. 3d DCA 1976); State v. Crum, 323 So.2d 673 (Fla. 3d DCA 1975).
Phoenix, 455 So.2d at 1025. See also State v. Tamburri, 463 So.2d 489 (Fla. 2d DCA 1985).
In this instance, Officer Layhew was the affiant on the arrest warrants having personal knowledge of the shooting upon which Brown’s charges were founded. Therefore, even assuming the arrest issue had been preserved in the trial court, the confessions still would not be subject to suppression as the products of an illegal arrest, because Layhew had probable cause that Brown was guilty of the crimes and lawfully could have arrested Brown under the rationale of a citizen’s arrest. See Phoenix; Tamburri.
Because I conclude that there was no competent, substantial evidence to sustain the trial court’s ruling that Brown’s statements were the product of coercion or improper inducement by the officers, a decision with which Judge Hall concurs specially, we reverse the order suppressing these statements.
Under the particular circumstances of this case, I also find that the search of Brown’s bedroom, which produced the firearm seized, was lawful. This case falls squarely within our supreme court’s holding in Preston v. State, 444 So.2d 939 (Fla. 1984), cert. denied, — U.S. -, 109 S.Ct. 1356, 103 L.Ed.2d 824 (1989). There, as here, the police received the mother’s consent to search her son’s room, under circumstances in which the mother had access to the son’s room. Further, the evidence established that Brown submitted to the mother’s rules in the apartment, and the mother paid the living expenses. In addition, Brown was required to leave his bedroom door open when his mother so directed.
*1059 Whether a consent to search was in fact voluntarily given is a question of fact to be determined from the totality of all the circumstances. Preston, 444 So.2d at 943. See also Schneckloth, 412 U.S. at 227, 93 S.Ct. at 2047. Based on the record before us, I believe the mother had the authority to consent to the search of Brown’s room. Her consent to that search was valid in that there was no equivocation or hesitation on her part as to the nature of that consent. Whether the mother read the consent form is not determinative. She was aware of the purpose for the search, voluntarily accompanied the officer to her apartment, and permitted the search. I cannot conceive of any other reasonable effort the officers could have made in this instance, unless the courts commence requiring the recording or video taping of such encounters in consent to search situations.
For the reasons I have previously set out and based upon Judge Hall’s concurring opinion, the suppression orders are reversed, and the case is remanded to the trial court to proceed accordingly.
HALL, J., concurs specially.
DANAHY, A.C.J., dissents with opinion.

 The fact that the arrest warrants were eventually executed at the Palmetto police station following Brown's confessions to the crimes does not alter my opinion in this case.