UNITED STATES, Appellee,

v.

**Todd E. SHEPHERD, Airman First Class, U.S. Air Force, Appellant.**

No. 64,672.
ACM 27838.

U.S. Court of Military Appeals.

Argued Feb. 12, 1991.

Decided Sept. 4, 1991.

For Appellant: *Major Bernard E. Doyle, Jr., (argued); Lieutenant Colonel Jeffrey*

R. Owens (on brief); *Colonel Richard F. O'Hair.*

For Appellee: *Captain Ann M. Mittermeyer (argued); Lieutenant Colonel Brenda J. Hollis and Captain David G. Nix* (on brief); *Major Paul H. Blackwell, Jr.*

## Opinion of the Court

SULLIVAN, Chief Judge:

During April 1989, appellant was tried by a general court-martial at Hurlburt Field, Florida. Contrary to his pleas, he was found guilty of assaulting Airman First Class Kevin Kobylski with a force likely to produce grievous bodily harm,[1] in violation of Article 128(b)(1), Uniform Code of Military Justice, 10 USC § 928(b)(1). He was sentenced to a bad-conduct discharge, confinement and forfeiture of $350 pay per month for 6 months, and reduction to airman basic. On July 17, 1989, the convening authority approved the sentence except that the forfeitures and confinement were approved only for a period of 3 months. On February 13, 1990, the Court of Military Review affirmed the findings and sentence as approved. 30 MJ 652.

On September 10, 1990, we granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRONEOUSLY INSTRUCTED THE MEMBERS OF THE COURT ON FLORIDA LAW RELATING TO THE RIGHTS OF A PRIVATE CITIZEN TO EMPLOY FORCE IN MAKING A CITIZEN'S ARREST.

We hold that any error resulting from the challenged instructions was harmless in this case. Art. 59(a), UCMJ, 10 USC § 859(a).

The Court of Military Review set forth the following facts of this case, which mirror the alleged victim's testimony:

On the evening of 5 November 1988, Airman First Class Kevin Kobylski was celebrating a friend's birthday at an off-base club near Fort Walton Beach, Florida. At about 2230 he took his girlfriend outside to show her his recently acquired Suzuki Samurai convertible. Since he remembered locking the vehicle, he was surprised to find the appellant seated in the passenger seat when he opened the door. Appellant said he was drunk and apparently had gotten into the wrong jeep since he'd had one like it. Airman Kobylski accepted this explanation, and, after the appellant departed, looked for his wallet which he remembered leaving under the passenger seat. When he failed to find it, he ran after the appellant who eluded him. Upon returning to his car, Kobylski's girlfriend handed him his wallet; she also showed him that his radio/stereo had been pulled out from its mounts, the wires were disconnected and it was hanging from the dashboard.

Airman Kobylski then saw the appellant peeking from behind a Coke machine between two buildings. Kobylski pursued the appellant toward the beach and found him hiding in a weedy dune area. Appellant was lying on his stomach, so Kobylski jumped on his back and sat on him to prevent his escape. When Airman Kobylski's girlfriend arrived, he told her to call the police. Soon thereafter, two of appellant's friends approached, so Kobylski released the appellant. They stood facing each other arguing; Kobylski accused the appellant of trying to steal his car radio and told the appellant to wait for the police. Appellant maintained he was drunk, had gotten into the wrong vehicle and denied trying to steal the radio. No blows were thrown; however, they did engage in a "shoving match."

As friends of the parties began to gather, Airman Kobylski was distracted by something one of appellant's friends said. He turned his head, and appellant struck him in the face with his right

---

1. SPECIFICATION: In that [appellant] did, at or near Fort Walton Beach, Florida, on or about 5 November 1988, commit an assault upon Airman First Class Kevin E. Kobylski by striking him in the face with his fists, and by choking his neck with his forearms, a force likely to produce grievous bodily harm.

hand. Kobylski was stunned as he fell backwards. Appellant charged and forced him to the sand where they wrestled before Airman Kobylski could begin to get up. When he got to his hands and knees, appellant began choking him. Appellant was standing behind Kobylski with an arm around his throat and pulling up. Appellant said, "I've done killed one and it won't bother me to do it again." With his remaining breath, Airman Kobylski called to his girlfriend for help. Reacting to her screams, one of Kobylski's friends knocked appellant off of Kobylski who was bleeding badly from his nose which was pushed over to the right side of his face. Before the police arrived, appellant ran from the beach.

After talking to the police, Airman Kobylski sought medical treatment at the Eglin Air Force Base emergency room. Examination revealed that his nose bone was shattered, the cartilage was broken and there were fragments of bone inside his nose. Additionally, he had two chipped teeth. Naturally, he was in severe pain. Due to swelling, corrective surgery on his nose was delayed; when surgery was performed, it required re-breaking the nose, scraping out bone fragments and installing two rods to straighten it.

30 MJ at 653–54.

Appellant, however, testified to a different set of events. He asserted that Kobylski had struck him immediately before he punched him and that he punched Kobylski twice and then restrained this person with a wrestling hold. The record of trial states:

A: And I couldn't remember exactly what it was or who it was, I believe it was Mark Long or Jerry, and they said—they were asking what—what his problem was about jumping me like that. So I told them that I'd take care of it and see what the problem was. And at that time, he came back over to me and confronted me again and he was very irrational and shoved me and pulling out my shirt.

Q: Was he yelling at you?

A: Yes, sir, he was.

Q: Was he accusing you as he indicated on—

A: Yes, he was accusing me about a wallet. To what he exactly said, I couldn't tell, because he was very irrational.

Q: Did he at some point then later change that to accuse you of—

A: Well, his girlfriend—

Q: —stealing a radio?

A: —Yes. His girlfriend ran up and I didn't hear exactly what they conversed. And then he came over and started accusing me about some stereo.

Q: Okay, and what did you say to him?

A: I told him I didn't know what he was talking about.

Q: And did you make any suggestions to him?

A: Yes. Twice. The first time when he confronted me about the wallet, I told him he should call the police, as he was grabbing at my sweater. And he said, "No, I'm taking care of it my way," and kind of shoved me. And then he went to his girlfriend and he came back and started talking about his stereo. Then confronted me again and kind of hit me in my chest and I finally said, "Look, I don't want to fight." You know, I'm in the Air Force and I'm going after a career and stuff like that.

Q: And what happened next?

A: Well, he punched me in my chest, and at that time, I looked down at my sweater and I had puke all over it. And I took off the sweater and as I was taking off my sweater he looked like he was starting to swing at me because he still had a hold of me and—

Q: And what did you do?

A: I punched him in the face.

Q: And why did you do that?

A: Because he was going to hit me.

Q: Did you do that in self-defense?

A: Yes, sir, I did.

Q: Did you do that for any other motive?

A: No, sir, I did not.

Q: Did you at that time—did you know Airman Kobylski before then?

A: I have never seen the individual in my life.

Q: Did you bear any ill will toward him before this started?

A: No, sir.

Q: What happened after that?

A: Well, he started to come back at me again, so I punched him in the face again and he went down on the ground. It was at that time that I restrained him in a wrestling hold.

. . . . .

The military judge, at the request of the prosecution and over objection of the defense, instructed the members that appellant had no right to defend himself against a reasonable attempt by Kobylski to make a citizen's arrest of appellant for a probable felony. (*See* appendix.) A finding of a lawful citizen's arrest was to be based on Florida law. It required that the members find probable cause in Kobylski's mind that appellant had committed a felony, that Kobylski used reasonable force to effect appellant's arrest, and that appellant knew that Kobylski was attempting to make a citizen's arrest. *See generally Phoenix v. State,* 455 So.2d 1024, 1025 (Fla.1984). No legal authority, however, was cited by the parties at trial or on appeal, by the military judge, or by the Court of Military Review for the resulting restriction on appellant's right to self-defense. *Cf. Speed v. United States,* 562 A.2d 124, 127–28 (D.C.App. 1989).

The cases which have been cited in this regard establish a far narrower principle. They hold only that the common law as

2. *See State v. Phoenix,* 428 So.2d 262, 265 (Fla. App. 4 Dist.1982), *approved,* 455 So.2d 1024 (Fla.1984); *San–Martin v. State,* 562 So.2d 776 (Fla.App. 2 Dist.1990); *State v. Brown,* 558 So.2d 1054, 1058 (Fla.App. 2 Dist.1990); *State v. Tamburri,* 463 So.2d 489, 491 (Fla.App. 2 Dist. 1985); *Edwards v. State,* 462 So.2d 581, 582

recognized in Florida does authorize a citizen to arrest or detain a probable felon in certain circumstances.[2] These cases, however, do not hold that the arrestee forfeits his right to self-defense against any reasonable or unreasonable force used by the citizen arrester. *Id.* In any event, appellant was charged with aggravated assault, in violation of Article 128 of the Uniform Code of Military Justice. Thus, the pertinent question is whether military law recognizes this limitation on the right of self-defense. *See generally United States v. Ginn,* 1 USCMA 453, 4 CMR 45 (1952).

Our review of military case law reveals no particular case on point except for some dicta in a somewhat dated Army Board of Review decision—*United States v. Clark,* 37 CMR 621, 624, *pet. denied,* 16 USCMA 671, 37 CMR 470 (1967). We have found numerous cases, however, from this Court which have recognized abrogation of a trespasser's right of self-defense when a citizen employs reasonable force to eject the trespasser from the former's home. *See United States v. Richey,* 20 MJ 251, 252 (CMA 1985); *United States v. Regalado,* 13 USCMA 480, 483, 33 CMR 12, 15 (1963); *United States v. Berry,* 6 USCMA 638, 645, 20 CMR 354, 361 (1956); *United States v. Adams,* 5 USCMA 563, 570–71, 18 CMR 187, 194–95 (1955). Moreover, we have discovered cases where an arrestee or prisoner forfeits his right to self-defense with respect to reasonable force used by a guard or police officer in accomplishing an arrest. *United States v. Blair,* 16 USCMA 257, 259, 36 CMR 413, 415 (1966); *United States v. Acosta–Vargas,* 13 USCMA 388, 391, 32 CMR 388, 391 (1962); *United States v. Long,* 7 USCMA 265–67, 22 CMR 55–57 (1956). *See United States v. Lewis,* 7 MJ 348, 351–52 (CMA 1979). *See also Nelson v. United States,* 580 A.2d 114, 117–18 (D.C.App.1990).[3] Finally, we have

(Fla.App. 4 Dist.1985). *See also United States v. Ible,* 630 F.2d 389, 393 (5th Cir.1980).

3. Federal civilian case law indicates that a person cannot invoke the right of self-defense against a Federal officer using reasonable force to accomplish his arrest. *See United States v.*

uncovered three state decisions that permit abrogation of the right of a probable felon to self-defense when a citizen employs reasonable force to arrest that felon. *See People v. Fosselman*, 33 Cal.3d 572, 189 Cal.Rptr. 855, 859, 659 P.2d 1144, 1148 (1983); *Walsh v. State*, 758 P.2d 124, 128 n. 8 (Alaska App.1988); *State v. Evans*, 755 S.W.2d 673–75 (Mo.App.1988). *But see State v. Holley*, 480 So.2d 94, 96 (Fla.1985); *Weaver v. State*, 220 So.2d 53, 57–58 (Fla. App. 2 Dist.1969). Since the propriety of this abrogation principle is not particularly challenged on this appeal and no opposing authority has been presented to this Court or discovered by us, we will proceed to appellant's more specific objections to the citizen's-arrest instructions in this case.

The assigned issue is somewhat imprecise in this regard. On its face it fails to delineate the exact effect that the instructions on the Florida law of citizen's arrest had on appellant's conviction for aggravated assault under Article 128. Appellant's brief, however, asserts that the judge's instructions on this matter denied him a fair trial in two specific ways. First, the Florida citizen's-arrest instructions given with respect to Kobylski's conduct were unjustified by the evidence in this case and thus improperly restricted appellant's right to self-defense under military law. Second, failure to give these citizen's-arrest instructions with respect to his own conduct that night denied him a viable affirmative defense to the military assault charge.

■ Appellant's first contention rests on his assertion that Florida law, or more accurately, the common law as recognized in Florida, was incorrectly applied by the judge. *See State v. Phoenix*, 428 So.2d 262, 265 (Fla.App. 4 Dist.1982), *approved*, 455 So.2d 1024 (Fla.1984). He contends that this state's law permits a citizen's arrest only to the extent that the citizen uses reasonable force to accomplish such an arrest. He further asserts that this lawful authority to use force does not exist

where there is no indication that the arrestee is trying to escape. He then notes that the evidence in his case shows no attempted escape on his part prior to the time Kobylski purportedly punched him. Accordingly, he concludes that the military judge's instructions were confusing to the extent they suggested that Kobylski's assault on him could constitute both a lawful arrest and subsequently abrogate his right of self-defense.

We note that appellant's argument is based on an extremely selective reading of the evidence of record. The victim in this case testified that, prior to his assault by appellant, he had chased appellant and subdued him on the beach. He also testified that he released appellant when the latter's friends arrived on the scene. He added, however, that he told appellant that appellant "was going to wait for the police until" they came to "settle it" but that appellant became "nervous" and then struck him. This is sufficient evidence for a rational finder of fact to conclude that Kobylski had restrained appellant and the latter was attempting to escape or resist that detention. Accordingly, appellant's argument that the judge's instructions were not justified on the basis of this record is without merit.

■ Appellant, for the first time on appeal, also claims that the Florida law of citizen's arrest authorized him to arrest Kobylski for a breach of the peace prior to appellant's use of force against that person. *Schachter v. State*, 338 So.2d 269, 270 (Fla.App. 3 Dist.1976). *But see Cheatem v. State*, 416 So.2d 35, 36 (Fla.App. 4 Dist.1982). He then suggests that his own conduct, subsequent to being struck by Kobylski, was lawful because it constituted reasonable force necessary to subdue or restrain this criminal until police arrived. In any event, he argues that the members should have been allowed to decide whether his use of force against the purported victim was justified as a lawful arrest.

*Alvarez*, 755 F.2d 830, 847 (11th Cir.), *cert. denied*, 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985); *United States v. Montoya*, 676 F.2d 428,

431 (10th Cir.), *cert. denied*, 459 U.S. 856, 103 S.Ct. 124, 74 L.Ed.2d 108 (1982); *United States v. Corrigan*, 548 F.2d 879, 883 (10th Cir.1977).

Thus, he concludes that the judge's failure to so instruct *sua sponte* denied him a lawful defense to the charge against him.

We note that this Court discussed the defense of citizen's arrest in the case of *United States v. Hamilton,* 10 USCMA 130, 132–33, 27 CMR 204, 206–07 (1959). There, we held that this defense was not applicable because there was no evidence that the alleged victim committed a felony. *Contra United States v. Walker,* 10 CMR 773, 810–12 (AFBR 1953) (Member Gingery, dissenting), *rev'd on other grounds,* 3 USCMA 355, 12 CMR 111 (1953). Here, there is also no evidence that the victim, Kobylski, committed any felony prior to his assault by appellant. *See* para. 41e(2), Part IV, Manual for Courts–Martial, United States, 1984. Moreover, the accused himself testified that he was acting in self-defense, not that he was attempting to restrain or apprehend Kobylski for a breach of the peace. Finally, the evidence of record shows that appellant's conduct was unquestionably excessive and more than that necessary to restrain Kobylski. No instruction on the defense of citizen's arrest was required in these circumstances. *See United States v. Clark,* 37 CMR at 624.

■ An additional question in this case arises from the military judge's concession in a "Memo of Decision" rendered after trial that he erred in instructing the members that attempted theft of the stereo was a felony under Florida law. § 812.014, Fla. Stat. (1988). The relevance of this concession is that, if Kobylski was not detaining appellant for a probable felony, his right to make a citizen's arrest did not exist under Florida law. Consequently, the judge's giving of the self-defense abrogation instruction may not have been warranted in this case.

The judge, nonetheless, considered his error harmless in view of the evidence before him. He noted that appellant instead could have been suspected of burglary of Kobylski's vehicle, which is a felony under Florida law. §§ 810.02 and 810.011, Fla. Statutes (1983). Accordingly, he concluded

that Kobylski still had the right to make a citizen's arrest in this case under Florida law. We agree with this reasoning.

■ Even assuming the judge erred in giving his instructions on the Florida law of citizen's arrest, we find no harm inured to appellant as a result of this error. Art. 59(a). Appellant, as noted above, was charged with and found guilty of aggravated assault, in violation of Article 128(b)(1). As a matter of military law, self-defense cannot justify this degree of force unless the accused reasonably feared death or grievous bodily harm. *See United States v. Regalado,* 13 USCMA at 485, 33 CMR at 17; *cf. United States v. Jones,* 3 MJ 279, 280 (CMA 1977). We have examined this record of trial and find no evidence that appellant had any fear of death or grievous bodily harm from Kobylski prior to striking this person on the face and choking him. *Cf. United States v. Rose,* 28 MJ 132, 135 (CMA 1989). Consequently, even an improperly restricted self-defense instruction was more than appellant was entitled to as a matter of law in this case. *United States v. Duckworth,* 13 USCMA 515, 521, 33 CMR 47, 53 (1963).

The decision of the United States Air Force Court of Military Review is affirmed.

Judge COX concurs.

APPENDIX

Now, the evidence has raised the issue of self-defense in respect to the offense of aggravated assault. Self-defense is a complete defense. For self-defense to exist, the accused must have had a reasonable apprehension that death or grievous bodily harm was about to be inflicted upon him and he must have actually believed that the force he used was necessary to prevent death or grievous bodily harm. In other words, self-defense has two parts. First, the accused must have had a reasonable belief that death or grievous bodily harm was about to be inflicted upon him. The test here is whether, under the same facts and circumstances as present in this case, that an ordinarily prudent adult faced with the same situation would have believed

that there were grounds to fear immediate death or serious bodily harm. Second, the accused must have actually believed that the amount of force he used was required to protect against death or serious bodily harm. To determine the accused's actual belief as to the amount of force which is necessary, you must look to the situation through the eyes of the accused as portrayed by the evidence in this case. As long as the accused actually believed that the amount of force he used was necessary to protect against death or grievous bodily harm that fact—the fact that the accused may have used excessive force or a different type of force than used by Airman Kobylski does not matter.

There's been some evidence that the accused may have had the ability to leave or to move away from Airman Kobylski. A person may stand his ground when he's in a place where he has a right to be; in a public beach, both parties have a right to be there. Evidence tending to show that the accused had an opportunity to withdraw safely is a factor that you should consider, however, in determining under all the circumstances of this case in deciding the issue of self-defense. You may also consider evidence as to whether the accused knew that other persons who might have helped him were present in the immediate area at the time of the incident.

Now, the accused, under pressure of a fast-moving situation or immediate attack, is not required to pause in his peril to evaluate the degree of danger or the amount of force necessary to protect himself. In deciding the issue of self-defense, you must give careful consideration to the violence and rapidity, if any, involved in the incident.

Now, one who intentionally provokes an assault or voluntarily engages in mutual combat is not entitled to claim self-defense, although the right to self-defense may be regained by good faith withdrawal. There's evidence in this case that the accused may have been a person voluntarily engaged in mutual fighting. A person is not entitled to self-defense if he voluntarily engaged in mutual fighting unless he previously withdrew in good faith; a person has provoked an attack and, therefore, given up the right to self-defense if he willingly and knowingly does some act toward the other person reasonably calculated and intended to lead to a fight. Unless such act is clearly calculated and intended by the accused to lead to a fight, the right to self-defense is not lost.

Now, there's been evidence in this case which indicates at the time of the offense that the accused may have been under the influence of alcohol. I've previously instructed you on the relevance of intoxication with respect to the accused's intent in the attempted theft specification. On the issue of self-defense, you're advised that the accused's voluntary intoxication should not be considered by you in deciding whether the accused was reasonably under the apprehension of immediate death or grievous bodily harm. Voluntary intoxication does not permit the accused to use any greater force than he would believe necessary to use when sober.

Now, under the common law as it exists in Florida, private persons may arrest *for a felony; such as the offense of theft of a car stereo valued over $100, under certain circumstances.* And that would be if the felony was committed in their presence, or, if they knew it was committed and they had probable cause to believe that the person arrested committed the felony. Probable cause means more than mere suspicion. It's a reasonable grounds for belief that the person apprehended was the perpetrator of the offense. A person making a citizen's arrest may only use that amount of force necessary to accomplish the apprehension and to detain the individual. If you find that Airman Kobylski was merely attempting to detain the accused for authorities but that the accused was unaware of that fact, then you should evaluate the accused's actions in accord with the law of self-defense as I have previously instructed you. *On the other hand, if you find that the accused was aware that Airman Kobylski was only attempting to detain him*

*for authorities and that Airman Kobylski was not using excessive force to effect that apprehension, then the defense of self-defense would not be available to the accused.*

The prosecution's burden to establish the guilt of the accused not only applies to the elements of the offense of aggravated assault, but also to the issue of self-defense. In order to find the accused guilty, you must be convinced beyond a reasonable doubt that the accused did not act in self-defense.

(Emphasis added.)

EVERETT, Senior Judge (concurring in part):

### I

Article 7, Uniform Code of Military Justice, 10 USC § 807, provides that "[a]ny person authorized under regulations governing the armed forces to apprehend persons subject to [the Code] or to trial thereunder may do so upon reasonable belief that an offense has been committed and that the person apprehended committed it." RCM 302(b), Manual for Courts–Martial, United States, 1984, authorizes military law enforcement officials, as well as commissioned, warrant, petty, and noncommissioned officers on active duty to apprehend servicemembers.

Kobylski does not fit into any category set forth in RCM 302(b). Therefore, if he attempted lawfully to apprehend Shepherd —or, in civilian parlance, to arrest him—his authority to do so could be derived only from some source other than the Uniform Code or the Manual for Courts–Martial. In this instance, the prosecutor relied on the law of Florida—where all material events occurred—as the source of Kobylski's authority to apprehend. Therefore, an initial question arises whether Article 7 and the regulations promulgated thereunder—RCM 302(b)—were intended by Congress to preempt any other authority for one servicemember to apprehend another.

This issue is especially important if a servicemember seeks to take another servicemember into custody under the purported authority of a citizen's arrest pursuant to state law. Even though views differ as to the desirability of permitting a citizen's arrest and as to the circumstances under which it should be allowed, I perceive no intention of Congress to exercise its authority under the Supremacy Clause, *see* U.S. Const. Art. VI, to preclude a servicemember from making a citizen's arrest that would be lawful if only civilians were involved. Indeed, in light of the legitimate interest of a state in maintaining order and enforcing its laws, I can see no reason why Congress would want to place servicemembers in a different position from other persons within a state with respect to their authority to make a citizen's arrest.

### II

If the Government may look to Florida law as a proper source of authority for Kobylski's apprehension of appellant, the next issue is whether Florida statutory or case law authorized a citizen's arrest under the facts of this case. The military judge initially concluded that the apprehension was proper because Kobylski had probable cause to believe that Shepherd had stolen his stereo. However, subsequent to the trial, the judge became convinced that the theft of the stereo was only a misdemeanor under Florida law. In that event, a citizen's arrest apparently was not permissible because—as was true under the common law and still is true in most jurisdictions— one private citizen usually is not allowed to arrest another for a misdemeanor.*

However, I do not believe it necessary to inquire further whether Shepherd's initial conduct could in some way be construed as a felony under Florida law which autho-

---

* It might be asked whether state arrest law may be intermeshed with the punitive articles of the Uniform Code, so that a servicemember who has committed a serious offense under the Code may be taken into custody for that offense by the same state law enforcement officials or private citizens who would be authorized to arrest the servicemember for violation of the applicable state law.

rized Kobylski to undertake a citizen's arrest or otherwise use force against appellant. Even if Kobylski lacked authority to apprehend Shepherd and so was himself guilty of an assault and battery on appellant, Shepherd's use of force in reaction thereto was so excessive as a matter of law that it could not be justified as self-defense or lawful resistance to an unlawful apprehension. Therefore, any error by the military judge in instructing on citizen's arrest did not prejudice appellant.