UNITED STATES, Appellee

v.

GEORGE H. VIGIL, Private E–1, U. S. Army, Appellant

3 USCMA 474, 13 CMR 30

No. 2722

Decided December 11, 1953

Lᴛ Cᴏʟ George M. Thorpe, U. S. Army, and 1sᴛ Lᴛ Ronald C. Meteiver, U. S. Army, for Appellant.

Lᴛ Cᴏʟ William R. Ward, U. S. Army, and 1sᴛ Lᴛ Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

Rᴏʙᴇʀᴛ E. Qᴜɪɴɴ, Chief Judge:

The accused was convicted by general court-martial of assault by a means likely to produce grievous bodily harm, to wit, his fist, in violation of Article 128, Uniform Code of Military Justice, 50 USC § 722. He was sentenced to dishonorable discharge, confinement at hard labor for three years, and total forfeitures. The convening authority approved the findings and the sentence but reduced the period of confinement imposed to two and one-half years. Upon affirmation by the board of review, we granted the accused's petition for review to consider a single issue:

"Whether the finding of guilty is an aggravated assault (Art 128(b) (1)) or merely assault and battery (Art 128(a))."

While confined to the post stockade, Camp Carson, Colorado, the accused was informed that Airman Basic Kirkpatrick, a fellow prisoner, had failed to perform his assigned duties. Reasoning that this increased his own workload, he determined to teach Kirkpatrick a lesson. Accordingly, after the lights in the stockade barracks were turned out, the accused approached the bed occupied by Kirkpatrick. Without preliminaries of any kind, he began punching the head and face of his sleeping victim with his gloved fists. No one interfered with him during the course of his activities, and having accomplished his purpose, he left. As a result of this onslaught, the victim lost eleven teeth, and sustained other injuries which may best be described in the language of the medical officer who treated him:

"There was a marked swelling of both eyes, lips, hematoma both eyes, both eyes completely shut, fracture of the nose which was regarded as comminuted in my estimation in that the nasal bones were completely fractured. There were bilateral fractures of both of the cheek bones, on each side, and fracture of the maxilla, which is the upper jaw, and fracture of the condyle of the mandible, lower jaw, on the left side, plus contusions and hemorrhages."

Upon these facts, the accused was charged with committing an assault upon Kirkpatrick by striking him with his fist and thereby intentionally inflicting grievous bodily harm—the offense proscribed by Article 128(b)(2) of the Code, supra. By exceptions and substitutions, the court convicted him of an assault by striking with his fist, "a means likely to produce grievous bodily harm"—the offense described in Article 128(b)(1).

Premising his argument upon the assertion that a fist is not a means likely to produce grievous bodily harm, within the meaning of Article 128, supra, the accused contends that so much of the finding as characterizes the means employed in the commission of the offense is mere surplusage. Consequently, it is argued, the court found him guilty only of simple assault and battery.

Article 128 provides:

"(a) Any person subject to this code who attempts or offers with unlawful force or violence to do bodily harm to another person, whether or not the attempt or offer is consummated, is guilty of assault and shall be punished as a court-martial may direct.

"(b) Any person subject to this code who—

(1) commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm; or

(2) commits an assault and intentionally inflicts grievous bodily harm with or without a weapon; is guilty of aggravated assault and shall be punished as a court-martial may direct."

It is evident from the language of the Article that the evil sought to be proscribed is that of assault, both of the type generally described as "simple" and that commonly referred to as "aggravated." In the latter category, two separate circumstances of aggravation are described: those involving the use of a weapon, means, or force likely to produce grievous bodily harm, and those in which such harm is intentionally inflicted. In the first class of aggravated assaults fall all those assaults accomplished not simply by means of instrumentalities normally considered "weapons," but also by means, which according to the manner of their use, are potentially dangerous. The inclusion of the words "or other means or force" readily indicates absence of any intention to limit application of the Article to those instances involving inanimate instrumentalities. In determining whether a particular weapons, means, or force is one likely to produce grievous bodily harm, the nature of the weapon, means, or force itself is of some importance, but is not conclusive. The crucial question is whether its use, under the circumstances of the case, is

476

likely to result in death or grievous bodily harm. If the answer to the question is yes, the conclusion that the weapon, means, or force is "likely" to produce that result must follow. See United States v. Cromartie, 1 USCMA 551, 4 CMR 143; United States v. Norton, 1 USCMA 411, 4 CMR 3; People v. Russell, 59 Cal App2d 660, 139 P2d 661; Clark and Marshall, A Treatise on the Law of Crimes, 4th ed, § 204, page 255; Manual for Courts-Martial, United States, 1951, paragraph 207b(2). Persuasive evidence upon this question is found in the nature of the means or force itself, the manner of its use, the parts of the body toward which it is directed, and, where applicable, the extent of the injuries actually inflicted. People v. Russell, supra.

In the instant case, the victim was either sleeping or laying motionless upon his cot at the time of the assault. The accused gave no warning of his purpose. From a vantage point of height, he deliberately delivered numerous blows with his clenched and gloved fists with power, precision, and accuracy upon a completely defenseless victim. The injuries which followed were the direct result of the force of the blows, and their extent was such as to preclude any contention that they were not "grievous." United States v. Dejewski, 3 USCMA 53, 11 CMR 53. Under the circumstances, the fists were a means or force likely to produce the result.

It follows that the finding returned by the court-martial is that of aggravated assault under Article 128(b)(1), supra.

In arriving at this conclusion, we have considered the opinions of the State authorities relied upon by the defense. These cases, it should be noted, involve interpretation of statutes wholly unlike Article 128, supra, which covers much more than dangerous weapons. They are, therefore, inaccurate guides in the instant case. In this particular, the comments of the Supreme Court of Oklahoma, in a decision reversing conviction of assault with a dangerous weapon, to wit, a fist, are of interest:

"It would probably simplify the administration of justice in this state if the legislature would pass what has often been denominated as an 'aggravated assault' statute; and this coupled with our 'attempt to kill' statute, would in all probability clarify the situation as it now exists. This, of course, is a matter for the consideration of the legislature and not for the courts." [Smith v. State, 79 Okla Cr 151, 152 P2d 279.]

The accused finally contends that the offense found is not a lesser included offense of that charged, for, the use of means likely to produce grievous bodily harm need not be shown to establish the offense charged. Our answer to this contention is simple. Article 128 (b)(2) requires that the grievous bodily harm be intentionally inflicted. Some means attributable to the accused must be shown, otherwise it would be impossible to establish the offense. When, without the intervention of independent causes, the means used actually produce such harm, it would be ridiculous to assert that they were incapable of causing the harm. The offense found is necessarily included in that charged. See United States v. Wright, 1 USCMA 602, 5 CMR 30; United States v. Day, 2 USCMA 416, 9 CMR 46.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

BROSMAN, Judge (concurring):

I concur. However, the final paragraph of the principal opinion troubles me somewhat. I should think that under Article 128(b)(2), a conviction of aggravated assault might properly be sustained if there was an intent to inflict grievous bodily harm, and if such harm was in fact inflicted—regardless of whether the means were of a sort which would normally have that effect. It is probable, of course, that a situation of this sort would arise only rarely. However, its theoretical possibility suggests that the offense proscribed in Article 128(b)(1) would not be included necessarily within that denounced by Article 128(b)(2)—in terms of abstract definition of the elements of the

**477**

respective crimes. However, in view of our opinion in United States v. Davis, 2 USCMA 505, 10 CMR 3, and in light of the provisions of the Manual's Table of Commonly Included Offenses, Appendix 12, page 540, I am willing to agree with the author of the principal opinion that the findings made by the court-martial were permissible ones. Of course, it is likely that everything I have said here was in his mind when he formulated the questioned paragraph. Certainly there is no real inconsistency between our views.