**UNITED STATES**

v.

**Senior Airman Alvin C. WILHELM,
FR516–96–5187, United States
Air Force.**

**ACM 29307.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 28 March 1991.

Decided 27 Jan. 1993.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens, Major Marilyn A. Gordon, and Captain Richard W. Aldrich.

Appellate Counsel for the United States: Colonel Richard L. Purdon, Lieutenant Colonel Brenda J. Hollis, Lieutenant Colonel Jeffery T. Infelise, Major Paul H. Blackwell, Jr., and Major Jeffrey C. Lindquist.

Before O'HAIR, SNYDER, and GRUNICK, Appellate Military Judges.

OPINION OF THE COURT

SNYDER, Judge:

Contrary to his pleas, appellant stands convicted by general court-martial of five specifications of assault and battery upon

his wife, in violation of Article 128, UCMJ (10 U.S.C. § 928 (1988)).[1] He was sentenced to confinement for 12 months and reduction to E-1. He raises 11 assignments of error, of which only three merit extensive comment. Finding no error prejudicial to the substantive rights of appellant, we affirm.

The charges arose out of appellant's contentious marriage. The evidence establishes that, on different occasions, appellant struck his wife, L, in the face and on her body with his hand, pinched her breasts, choked her, and bit her buttocks.

## I. INSTRUCTIONS

### A. Self–Defense

■ During the trial, appellant's primary defense to the charges was either absence of *mens rea*, *i.e.*, he committed the acts while he and L were engaged in horseplay, or the blow in question was unintentional. On appeal, however, appellant argues the trial judge improperly foreclosed his ability to present the defense of self-defense with regards to specifications 2, 5, and 6.[2] He asserts that evidence giving rise to the defense was provided via his statement, which was admitted into evidence. We disagree and find no error.

Because appellant carefully "explained" the nuances of his pretrial statement during his cross-examination by trial counsel, we believe his testimony at trial is the better indicator as to whether the evidence raised the issue of self-defense. His testimony clearly reflects he did not raise or rely on self-defense.

With regards to specification 2, appellant testified L, while behind him, struck him on the back of his head with a pan while he was trying to attend to the baby. He stated he struck L reflexively as he raised his hands to grab his head. He made no claim of responding to defend himself or even intending to strike L on that occasion. On the basis of this testimony, the trial judge appropriately provided a clear and thorough instruction on the affirmative defense of accident. Regarding specification 5, appellant testified he was trying to exit the bathroom, and he pinched L's breasts and took hold of her leg merely to move her from the doorway which she was blocking. On specification 6, he insisted he was merely responding in kind during normal marital horseplay.

We agree with the trial judge. Appellant's testimony did not reasonably raise the issue of self-defense. As reflected in the record, and in appellee's brief, the subject of self-defense arose when the trial judge mentioned self-defense as an example of justification for a battery while giving his instructions. Although not determinative, we note trial defense counsel did not use the theory of self-defense and did not object to the trial judge instructing the members that self-defense was not an issue. *See United States v. Taylor*, 26 M.J. 127 (C.M.A.1988).

### B. Mutual Combatants

■ Appellant next raises the following assignment of error:

WHETHER THE JUDGE ERRED IN REFUSING TO GIVE AN INSTRUCTION ON MUTUAL COMBATANTS AND COMPOUNDED HIS ERROR BY ADVISING THE MEMBERS THAT THE ISSUE DID NOT APPLY TO THE INSTANT CASE.

We hold an accused may not claim mutual affray or mutual combat as a defense to a charge of battery.

After the trial judge instructed the members self-defense was not in issue, the president requested a definition of mutual combat. He informed the president the issue was not applicable to the case at hand, but granted the request for the definition. In

---

1. Appellant was found not guilty of two other specifications, as well as two specifications of communicating a threat, in violation of Article 134, UCMJ (10 U.S.C. § 934 (1988)).

2. Specification 2 alleged appellant struck L on her face with his hand and pushed her to the ground. Specification 5 alleged he pinched her breasts and pushed her. Specification 6 alleged he struck L's shoulders and arms, bit her buttocks, and choked her. These offenses occurred on different dates.

the Article 39(a), UCMJ, session which followed, civilian defense counsel argued that if the members found appellant and L were involved in a mutual affray, that would mean any touching of L was consensual and appellant would not be guilty of a battery. He requested the members be so instructed. The trial judge denied the request and instructed the members as follows:

> Let me advise you that the concept of mutual combatants does not apply in this case. It applies to the existence of the right to claim the defense of self defense. That is not an issue before the court.
>
> Mutual combatants do not have legal justification or excuse. However, you must determine, based on all the facts and circumstances presented in the case, whether or not the victim consented to the touching.

Appellant adopts civilian trial defense counsel's argument, which is based on a definition he read from a Black's Law Dictionary,[3] as his basis for arguing error. The sum of the definition is, when people voluntarily enter into an affray they consent to putting their persons at risk. Appellant argues the Black's definition provided him with a potential defense which the trial judge improperly foreclosed. We disagree.

■ In support of his averment, appellant argues MCM, 1984, Part IV, paragraph 54c(1)(a) (1984), "requires an assault be done without consent of the person affected." Therefore, because a mutual affray equals consent, there is no battery. Appellant's premise omits a key word from the MCM definition of battery. MCM, Part IV, paragraph 54c(1)(a) (1984) requires an assault be done without the *lawful* consent of the person affected. The inclusion of the word, "lawful," by the MCM's drafters is not mere surplusage, for any consent implied in mutual combat is void as a matter of law.

■ Although the trial judge was not correct in limiting mutual combat solely to the law of self-defense in the above instruction, his instruction that the concept did not apply to the case and that mutual combatants do not have justification or excuse was entirely correct.

■ The mutual combatant's status is not favored by the law. "Both parties to a mutual combat are wrongdoers, and the law of self-defense cannot be invoked by either, so long as he continues in the combat." *United States v. O'Neal*, 16 U.S.C.M.A. 33, 36 C.M.R. 189, 193 (1966) (quoting *Rowe v. United States*, 164 U.S. 546, 556, 17 S.Ct. 172, 174, 41 L.Ed. 547 (1896)). In addition to forfeiting the right to claim self-defense, the unlawful status of the mutual combatant also precludes a claim that the other participant in the affray consented to the touching of one's person. Consequently, because the conduct remains unlawful, one who participates in an affray, *i.e.*, fisticuffs, etc., cannot interpose the "consent" of the other participants as a defense to a charge of battery.[4]

Our predecessor dealt with this general issue in *United States v. Dennis*, 36 C.M.R. 884 (A.F.B.R.1966), which involved a charge of assault with a dangerous weapon. Dennis admitted he and the victim invited each other outside, where they engaged in a scuffle. However, he denied cutting the victim with a broken glass. Dennis believed the cut may have occurred from broken glass as they fell and rolled on the ground. He requested an instruction on the lesser offense of assault and battery. The law officer denied the requested instruction, reasoning that, if the members found no dangerous weapon was used, the

---

3. Civilian counsel did not provide the edition from which he read. Practitioners should be sensitive to providing full citations for the record. In the instant case, neither the fourth, fifth, nor sixth editions' definition comport with the one read into the record by civilian counsel.

4. The issue of assault and battery and the applicability of mutual combat do not apply to legally recognized sporting contests, *i.e.*, boxing and wrestling matches. *See* Annotation, *Consent As Defense To Charge of Criminal Assault and Battery*, 58 A.L.R.3d 662 (1974); 6 Am.Jur.2d *Assault and Battery* §§ 66, 68 (1963).

violence alleged was "mutual combat by agreement, in which case you would have the consent of either party to the mutual combat," and Dennis would not be guilty of any offense at all. This left the members with only two options: either convict Dennis as charged or acquit him. They convicted him as charged.

Applying the *O'Neal* rationale of mutual wrongdoing, the Board held the law officer committed prejudicial error by ruling the lesser offense of assault and battery was not in issue and in denying the requested instruction. The board reasoned the members could have reasonably concluded the victim was cut by broken glass lying on the ground, thereby leaving Dennis guilty of committing a simple assault and battery upon the victim during their mutual combat. *United States v. Dennis,* 36 C.M.R. at 888. This rationale also applies where consent is not recognized as a matter of public policy. *United States v. Holmes,* 24 C.M.R. 762, 765 (consent of victim not a defense where victim provoked men to beat her prior to engaging in sex, and accused's and victim's affray spilled into public street). *See also* Annotation, *Consent As Defense To Charge of Criminal Assault and Battery,* 58 A.L.R.3d 662 (1974); 6 Am.Jur.2d *Assault and Battery* §§ 66, 68 (1963).

■ We find the trial judge correctly ruled that mutual combat is not a defense to a charge of battery. Further, his instruction was beneficial to appellant. The last sentence of the instruction he gave on mutual combat allowed the members to resolve the consent issue from all of the facts and circumstances, including any possible mutual affray.[5] We further find the trial judge did not err in instructing the members they were at liberty to infer the unlawfulness of the battery in the absence of evidence to the contrary. *See United States v. Lyons,* 33 M.J. 88 (C.M.A.1991).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant next complains he was prejudiced by his detailed military defense counsel's breach of the attorney-client privilege. The specific breach complained of is defense counsel's disclosure of a statement prepared by appellant prior to trial. The statement was appellant's version of the events surrounding the charges against him. Appellant asserts he prepared the statement at the request of his detailed counsel, but only after he was assured the statement was confidential and would not be disclosed to anyone else. Appellant claims detailed defense counsel showed the statement to L, and, as a result thereof, L was able to tailor her testimony against appellant.

In response via affidavit, detailed defense counsel avows he requested the statement in question, and he fully explained to appellant all his rights relating to the pretrial investigation pursuant to Article 32, UCMJ. With appellant's concurrence, it was decided no defense evidence would be submitted at the Article 32 investigation. Detailed defense counsel states, however, that, after the government presented its evidence, appellant expressed great concern and displeasure about the one-sided nature of the hearing and felt he was being railroaded to court. Notwithstanding detailed defense counsel's caution that the statement admitted assaults on L (to a less aggravated degree), appellant insisted on signing and submitting his statement to the investigation officer. After doing so, detailed defense counsel states the overall defense strategy changed to one of seeking a special court-martial or perhaps a discharge in lieu of trial. Counsel believed this strategy reasonable in view of L's lack of cooperation with the government at that point of the proceedings.

Our review of the record gives us no reason to discredit detailed counsel's account of the events. Appellant retained

---

**5.** The members were still at liberty to accept appellant's testimony that he and L were merely playing when he committed the acts in specification 6. If so, it would not have been necessary for them to address mutual affray to find him not guilty, for marital horseplay is not unlawful.

civilian counsel for his trial. Civilian counsel did not raise any objection to the submission into evidence of appellant's statement, or otherwise place the court on notice of a claimed breach of the attorney-client privilege. We also note appellant did not request another detailed military counsel to represent him. The same detailed defense counsel served at trial and handled all of appellant's post-trial submissions. We resolve the facts adversely to appellant and find no merit in this assignment of error.

## III. COMPLETENESS OF RECORD OF TRIAL

■ Appellant next complains the record of trial is incomplete as a result of a failure to include 16 pages of testimony. We disagree and find no prejudice.

During deliberations on findings, the members requested to have the testimony of five witnesses reread, including appellant and L, as it related to specification 4, Charge I. Because of the relative brevity thereof, the trial judge directed the reporter to prepare transcripts of the testimony and had them read to the members. The transcripts were included as an appellate exhibit.

Appellant's complaint is the reporter noted in the record the fact she read the transcripts, rather than actually setting forth the transcripts verbatim at that point of the record. We find no error in the method employed by the reporter. Including the referenced testimony as urged by appellant would be redundant. We decline to require this redundancy, thus elevating form over substance. We find the record both complete and verbatim. *See United States v. Lashley*, 14 M.J. 7 (C.M.A.1982);

*United States v. McCullah*, 11 M.J. 234 (C.M.A.1981).

## IV. OTHER ASSIGNMENTS OF ERROR

The issue of whether military trial and appellate judges not enjoying fixed terms of office deprived appellant of due process of law was decided adversely to appellant in *United States v. Graf*, 35 M.J. 450 (C.M.A.1992). Appellant did not object to the trial judge deviating from the order of argument of R.C.M. 1001(a)(1). Thus, any error is waived, and we find no plain error. *See United States v. Martin*, 36 M.J. 739 (A.F.C.M.R.1993). Further, we find no error in trial counsel's wording of his questions on cross-examination.

With regards to the assignments of error based on the nonjudicial post-trial inquiry,[6] we specifically find as fact that there is no basis to order a *DuBay* Hearing. *See United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

The findings and sentence are correct in law and fact, Article 66(c), and are hereby,

AFFIRMED.

Senior Judge O'HAIR and Judge GRUNICK concur.

6. After trial, a number of allegations surfaced, including the claimed breach of the attorney-client privilege addressed in Part II of this opinion, improper conduct by assistant trial counsel with the victim, illegally seizing and withholding items intended as defense evidence, and improperly disallowing appellant from working in his former duty section while he was in the local confinement facility. Because the convening authority had already taken his action on the findings and sentence when these allegations surfaced, a commander's inquiry was ordered to test the validity of the allegations. With the exception of the attorney-client issue, the inquiry officer concluded the allegations were unfounded. Because of Air Force Area Defense Counsel's separate chain of command, the inquiry officer deemed that allegation beyond his authority and made no finding or comment thereon. He recommended the information gathered on it be provided to appropriate authority. We ordered production of the inquiry to determine if evidence relevant to appellant's appeal was contained therein.