**UNITED STATES**

v.

**Richard G. OUTHIER, 137 78 0652
Private First Class (E–2),
U.S. Marine Corps.**

**No. NMCM 94 01468.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 8 Feb. 1994.

Decided 31 March 1995.

---

CDR M.T. Hall, JAGC, USN, Appellate Defense Counsel.

Maj. Laura L. Scudder, USMC, Appellate Government Counsel.

Before MOLLISON, REED and DeCICCO, JJ.

MOLLISON, Senior Judge:

The principal issue in this appeal from a general court-martial conviction is whether the appellant's plea of guilty to aggravated

assault was providently entered. We conclude that it was and affirm.

The appellant was tried by general court-martial on 8 February 1994. Pursuant to a pretrial plea bargain, the appellant pled guilty to eight violations of the Uniform Code of Military Justice [UCMJ], including assault with a means or force likely to produce death or grievous bodily harm. UCMJ art. 128(b), 10 U.S.C. § 928(b) (1988). A military judge sitting alone accepted the appellant's pleas of guilty and sentenced him to confinement for 2 years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence; however, he suspended all confinement from the date of his action, 1 June 1994. The appellant's case was automatically appealed to this court for review in accordance with Article 66, UCMJ, 10 U.S.C. § 866 (1988).[1]

The appellant assigns two errors on appeal.[2] He contends the military judge erred in accepting his plea of guilty to Charge III, alleging aggravated assault. He also contends the dishonorable discharge is inappropriately severe. The appellant seeks dismissal of Charge III and mitigation of his dishonorable discharge to a bad-conduct discharge.

## I.

The Specification of Charge III alleges the following:

In that Private First Class Richard G. Outhier, U.S. Marine Corps, ... did, at Naval Station, Annapolis, Maryland, on or about 24 September 1993, commit an assault upon OCSN Anthony R. Avila, U.S. Navy, by telling him that he, Private First Class Outhier, was a qualified and certified Navy SEAL and Hospital Corpsman, that he was an expert in "drownproofing" techniques, and wrongfully establishing a situation wherein OCSN Avila believed that he could rely upon Private First Class Outhier's training, experience, and qualifications to put his life in his hands, thereafter caused OCSN Avila, trusting Private First Class Outhier's presence, to jump into deep water with his hands and feet bound and become helpless to swim or survive in the water, a means or force likely to produce grievous bodily harm, to-wit: drowning.

Before accepting the appellant's pleas of guilty, the military judge examined the appellant as required by Rule for Court–Martial [R.C.M.] 910 and *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969). That examination reveals the following:

The accused, an E–2 in the Marine Corps, went on unauthorized absence from Camp Pendleton to settle some unspecified personal matters. He ended up in Annapolis, Maryland, because he was raised near there and was familiar with the area. On or about 22 September 1993, he reported to the United States Naval Academy and Naval Station, Annapolis, Maryland, posing as a Hospital Corpsman Petty Officer Second Class, named Jonathan Vincent Valjean.[3] He claimed to be a member of a Navy SEAL team fresh from Somalia, sent to the Naval Academy to assist in recruiting Navy Seals. He wore a camouflage utility uniform with the insignia of an HM2 and a Navy SEAL. He attributed his inability to produce orders or an identification card to the fact that he had just returned from overseas and there were internal problems in his platoon. While still posing as HM2 Valjean, the accused became acquainted with a Seaman Avila of the Naval Station staff. On 24 September, the accused and SN Avila went to the

---

1. Oral argument was heard on this case at the United States Naval Academy on 1 March 1995.

2.

## I.

THE MILITARY JUDGE ERRED IN ACCEPTING APPELLANT'S PLEA OF GUILTY TO CHARGE III.

## II.

A DISHONORABLE DISCHARGE IS AN INAPPROPRIATELY SEVERE PUNISHMENT FOR THESE OFFENSES.

3. The record elsewhere reflects the appellant called himself "HM2 Jon Valjean." Jean Valjean, pronounced zhän välzhän, is the protagonist in Victor Hugo's *Les Misérables*. The record suggests the appellant pronounced his name as Hugo's fictional hero would have. Record at 39.

Naval Academy pool to swim. The accused told SN Avila that he was a Hospital Corpsman and a certified Navy SEAL and that he was an expert in "drownproofing techniques," which he then undertook to teach to SN Avila. To do this, the appellant bound SN Avila's hands and feet, and SN Avila entered the pool in deep water. The accused admitted that he had no permission to do this exercise, that he was not qualified to do it, and that he had no legal justification or excuse for doing it. He also admitted that he caused SN Avila to rely on his claimed training, experience and qualifications, and thus caused SN Avila to place his life in the accused's hands by jumping bound hand and foot into deep water, where SN Avila was helpless to swim or survive. Finally, the accused admitted that SN Avila would not have agreed to do this exercise had he been informed of the true situation and that under the circumstances the accused created a means or force likely to cause grievous bodily harm, drowning. No physical injuries resulted from the drownproofing exercise. The accused's ruse was eventually discovered, and on 5 October 1993 he was apprehended.

## II.

 The appellant contends the foregoing facts do not present a legally sufficient basis on which to uphold appellant's conviction for this offense because the underlying premise of the charge was that mere words are sufficient to constitute an assault.[4] Appellant's brief at 3. In assessing the merit of that claim, we apply the following principles:

(1) **An accused may not enter inaccurate, inconsistent, improvident, or uninformed pleas of guilty, and the military judge may not permit the accused to do so.** UCMJ art. 45, 10 U.S.C. § 845 (1988); *see*

*United States v. Schwabauer*, 37 M.J. 338 (C.M.A.1993).

(2) **Therefore, before the military judge may accept the accused's pleas of guilty, the military judge must personally inquire of the accused as to the factual basis for the plea.** R.C.M. 910(c), (e); *Care*, 40 C.M.R. at 253; *see also United States v. Craney*, 23 C.M.A. 519, 50 C.M.R. 658, 1 M.J. 142 (1975); *United States v. Daniels*, 39 M.J. 789 (N.M.C.M.R.1993).

(3) **The facts revealed by the accused must objectively support the plea.** *Schwabauer*, 37 M.J. at 341 (citing *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980)).

(4) **The accused's statements are taken at face value for this purpose.** *United States v. Jemmings*, 1 M.J. 414, 418 (C.M.A. 1976).

(5) **The accused's legal conclusions alone are insufficient.** *United States v. Howajrah*, 40 M.J. 672, 674 (N.M.C.M.R. 1994); *United States v. Dunning*, 40 M.J. 641, 645 (N.M.C.M.R.1994) (citing cases).

(6) **Inconsistencies and apparent defenses must be resolved by the military judge, or the guilty pleas must be rejected.** *Jemmings*, 1 M.J. at 418; *United States v. Dunbar*, 20 C.M.A. 478, 43 C.M.R. 318, 1971 WL 12785 (1971); *United States v. Jackson*, 23 M.J. 650 (N.M.C.M.R.1986), *petition denied*, 24 M.J. 405 (C.M.A.1987).

(7) **The military judge is not required to ferret out or negate all possible inconsistencies or defenses. Rather, the military judge is required to deal with potential issues raised during the providence inquiry or trial that indicate an inconsistency or a defense.** *Jackson*, 23 M.J. at 652.

(8) **When the accused's responses reasonably raise the question of a defense, the**

---

4. Appellant has not asserted that Charge III fails to state an offense. R.C.M. 907(b)(1)(B). In any case, a flawed specification first challenged after trial is viewed with greater tolerance than one which was attacked before findings and sentence. *United States v. Watkins*, 21 M.J. 208, 209 (C.M.A.1986). Additionally, the standing to challenge a specification for the first time on appeal will be considerably less when an accused has pled guilty. *Id.* at 210; *see also United States v.*

*Bryant*, 30 M.J. 72 (C.M.A.1990). The appellant was not apparently misled by the specification, as drafted; the record will protect him from further prosecution for the same offense; and the specification is not so defective that it cannot within reason be construed to charge a crime. Therefore, the specification is sufficient to withstand challenge at this stage of the proceedings. See *Watkins*, 21 M.J. at 210.

military judge must make a more searching inquiry. *United States v. Timmins,* 21 C.M.A. 475, 45 C.M.R. 249, 1972 WL 14168 (1972).

(9) A military court of criminal appeals may not set aside a finding of guilty on the basis of an error of law unless the error is materially prejudicial to the substantial rights of the appellant; therefore, it will not set aside a finding of guilty based on a guilty plea unless "the record of trial shows a 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Newsome,* 35 M.J. 749, 751 (N.M.C.M.R.1992), *aff'd,* 38 M.J. 464 (C.M.A. 1993) (quoting *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991)); UCMJ art. 59(a), 10 U.S.C. § 959(a) (1988).

(10) A military court of criminal appeals "will not engage in 'post-trial speculation' concerning the factual basis for guilty pleas." *See United States v. McGowan,* 41 M.J. 406, 410 (U.S. Armed Forces 1995) (quoting *United States v. Harrison,* 26 M.J. 474, 476 (C.M.A.1988)).

### III.

▬▬ Article 128 of the Code proscribes assault and battery. The following principles of law apply to this offense: [5]

(1) A battery is the unlawful application of force to the person of another. UCMJ art. 128, 10 U.S.C. § 928 (1988); Manual for Courts–Martial, United States, 1984 [MCM], Part IV, ¶ 54c(2); ROLLIN M. PERKINS & RONALD M. BOYCE, CRIMINAL LAW 152 (3d ed. 1982); 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 7.15 (1986); MODEL PENAL CODE § 211.1, cmt. 1, *reprinted in ALI Model Penal Code and*

*Commentaries* at 174 (1980); *see generally Lamb v. State,* 93 Md.App. 422, 613 A.2d 402 (1992), *cert. denied,* 329 Md. 110, 617 A.2d 1055 (1993), and *cited with approval in United States v. Anzalone,* 41 M.J. 142, 145 (C.M.A.1994).

(2) The force must be applied intentionally or through culpable negligence. MCM, Part IV, ¶ 54c(2)(d).

(3) The force may be applied directly or indirectly. MCM, Part IV, ¶ 54c(2)(b); PERKINS & BOYCE, *supra* at 153–54; *see United States v. Banks,* 39 M.J. 571 (N.M.C.M.R. 1993), *aff'd,* 40 M.J. 320 (C.M.A.1994) (summary disposition).

(4) There even may be a battery when one creates a situation whereby the victim injures himself. LAFAVE & SCOTT, *supra* at § 7.15(b).

(5) It is immaterial that an accused does not intend to harm anyone, for neither malice nor anger is necessary for a battery. 2 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 178 (14th ed. 1979).

(6) Battery requires an injury or a touching. *See United States v. Schoolfield,* 40 M.J. 132, 136 (C.M.A.1994) *cert. denied,* —— U.S. ——, 115 S.Ct. 1162, 130 L.Ed.2d 1118 (1995); MCM, Part IV, ¶ 54c(1); LAFAVE & SCOTT, *supra* at § 7.14(a).

(7) The slightest touching of another is a battery if the touching is unlawful. PERKINS & BOYCE, *supra* at 152.

(8) A touching is unlawful if it is offensive or injurious and without legal justification, excuse, or privilege. PERKINS & BOYCE, *supra* at 153–54, 156, 158, Chapter 10, *passim.* For example, subject to important limitations, a touching may be done lawfully

---

**5.** A case of assault may proceed under three theories: the assault was an attempted battery, a threatened battery, or a consummated battery. Rollin M. Perkins & Ronald M. Boyce, Criminal Law 151 (3d ed. 1982); *see also United States v. Anzalone,* 41 M.J. 142, 145 (C.M.A.1994); *United States v. Schoolfield,* 40 M.J. 132, 134 (C.M.A. 1994); *cert. denied,* —— U.S. ——, 115 S.Ct. 1162, 130 L.Ed.2d 1118 (1995). The parties suggest, and we agree, the first two may be ruled out. An attempted battery is an unconsummated battery. An attempted battery occurs when the accused intends, but fails, to inflict a battery. Manual for Courts–Martial [MCM], United States, 1984, Part

IV, ¶ 54c(1)(b)(i); Perkins & Boyce, *supra* at 151. A threatened battery, sometimes referred to as an offer-type assault, is an unlawful demonstration of violence which creates in the mind of the victim a reasonable apprehension of receiving a battery. MCM, Part IV, ¶ 54c(1)(b)(ii); Perkins & Boyce, *supra* at 159–63. In this case the appellant apparently did exactly what he intended to do. He either inflicted the bodily harm he intended or he did not. The record also suggests no creation of apprehension. In other words, there was either a consummated battery or there was nothing at all.

in combat, in self-defense, in defense of another, in defense of property, to prevent the commission or consummation of a crime, in the apprehension of a suspect, in administering parental discipline, in administering medical treatment, when permitted in authorized training exercises, in the course of sporting events, to attract the attention of another, or to prevent injury. MCM, Part IV, ¶ 17, 54c(2)(d); PERKINS v. BOYCE, *supra* at 153–54, 156, 158, Chapter 10, *passim;* LAFAVE & SCOTT, *supra* at §§ 5.5–5.10; TORCIA, *supra* at §§ 186–88, 192, 194–96; R.C.M. 302(d)(3), 916(c) & discussion, (e); *United States v. Robertson,* 36 M.J. 190 (C.M.A.1992); *United States v. Rankins,* 34 M.J. 326, 328 (C.M.A. 1992); *United States v. Shepherd,* 33 M.J. 66 (C.M.A.1991); *United States v. Regalado,* 13 C.M.A. 480, 33 C.M.R. 12, 1963 WL 4805 (1963); *United States v. Hamilton,* 10 C.M.A. 130, 27 C.M.R. 204, 1959 WL 3593 (1959); *United States v. Fitten,* 39 M.J. 659 (N.M.C.M.R.1993), *petition for review granted,* 40 M.J. 40 (C.M.A.1994); *cf. United States v. Renton,* 8 C.M.A. 697, 25 C.M.R. 201, 1958 WL 3113 (1958).

(9) **In some situations, consent of the victim may render an otherwise unlawful touching, lawful; however, consent will not have such an effect if the consent: (1) is coerced; (2) obtained by fraud; (3) given by someone legally incapable of consenting to the touching; or (4) relates to a matter as to which consent will not be recognized as a matter of law.** *United States v. Greaves,* 40 M.J. 432, 433 (C.M.A. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 907, 130 L.Ed.2d 790 (1995); PERKINS & BOYCE, *supra* at 154; *see also United States v. Brantner,* 28 M.J. 941 (N.M.C.M.R.), *petition denied,* 29 M.J. 314 (C.M.A.1989); *United States v. Wilhelm,* 36 M.J. 891 (A.F.C.M.R.1993).

(10) **Consent of the victim is not recognized as a defense to battery when the conduct involves serious bodily injury; therefore, consent is never a defense to an aggravated battery.** *Brantner,* 28 M.J. at 944.

(11) **Fraud, whether fraud in the inducement or fraud in the *factum,* vitiates any defense of consent to a battery.** PERKINS & BOYCE, *supra* at 1082; LAFAVE & SCOTT, *supra* at § 5.11; *see also Brantner,* 28 M.J. at 943.

(12) **For an assault with a means likely to produce grievous bodily harm, it is not necessary that grievous bodily harm actually be inflicted.** MCM, Part IV, ¶ 54c(4)(a)(iv); *Brantner,* 28 M.J. at 944.

(13) **Whether means are likely to produce grievous bodily harm is not established by the subjective state of mind of the victim or assailant, but objectively.** *Brantner,* 28 M.J. at 944.

(14) **In order for means to be likely to produce grievous bodily harm, the harm need only be more than merely a fanciful, speculative, or remote possibility.** *United States v. Joseph,* 37 M.J. 392, 396–97 (C.M.A. 1993); *United States v. Johnson,* 30 M.J. 53, 57 (C.M.A.), *cert. denied,* 498 U.S. 919, 111 S.Ct. 294, 112 L.Ed.2d 248 (1990).

### IV.

Based on his own admissions, the appellant unlawfully applied force to the body of SN Avila, both directly and indirectly, by binding SN Avila's hands and feet and causing Avila to jump into deep water. These acts were done intentionally by the appellant. SN Avila was physically touched by both the bonds and the water. It is immaterial whether the appellant was motivated by a desire to harm SN Avila, by public-spiritedness, by a quest for adventure, or by self-aggrandizement. The appellant admitted he was not qualified to undertake this exercise, and he admitted he had neither authority nor legal justification or excuse for his acts. He also admitted that SN Avila would not have consented to this activity had he known the true facts. Hence, the elaborate fraud he perpetrated vitiated any claim of consent, a claim which we recall is unavailable as to an aggravated assault in any case. Finally, the appellant admitted that the means he employed were likely to produce grievous bodily harm. Based on his admissions, those means were the bonds and deep water—not one in isolation of the other. His admissions on all counts were objectively reasonable. He said nothing in the trial that

was inconsistent with these admissions. We take them at face value. His admissions are complete. We will not speculate on what responses the appellant might have given to questions not put to him. Nor will we speculate on what findings might have been entered following a not guilty plea and a trial of the facts. In short, we find no substantial basis in law or fact for questioning the appellant's plea of guilty to Charge III, and his plea to that offense will not now be rejected.[6]

## V.

The appellant had two prior nonjudicial punishments for bad check offenses. He embarked on the foregoing endeavor scarcely three days after a prior special court-martial for unauthorized absence. He masqueraded as a petty officer with special knowledge and training as a SEAL and a hospital corpsman. He affirmatively exploited this impersonation for his own benefit and subjected other military personnel to unwarranted danger. We find the dishonorable discharge entirely appropriate in his case.

## VI.

The findings of guilty and sentence, as approved on review below, are affirmed.

REED, Senior Judge, concurs.

DeCICCO, Judge, concurring in part and dissenting in part:

I concur with the majority in affirming all of the findings of guilty except for the aggravated assault. I would affirm an assault consummated by a battery, and upon reassessment of the sentence, I would set aside the dishonorable discharge and affirm a bad-conduct discharge.

The facts in this record establish an assault consummated by a battery. This offense resulted from the appellant's use of fraud which vitiated Seaman Avila's consent to having his hands and feet bound and entering the water. I dissent from affirming an aggravated assault in this case for two reasons. First, the record, when considered in its entirety, lacks a sufficient factual basis to support the guilty plea. The facts (as distinguished from the appellant's legal conclusions) do not establish a means or force "likely" to produce death or grievous bodily harm. Second, if this is anything other than a consummated battery, it could only be what is known in various jurisdictions as the offense of reckless endangerment, not aggravated assault. In light of these conclusions, I find substantial bases to reject the appellant's guilty plea to aggravated assault.

At the court-martial, in addition to pleading guilty to the aggravated assault, the appellant also pled guilty to absenting himself without authority for 15 days, making four false official statements as to his true identity, impersonating a petty officer, and wearing unauthorized insignia. His guilty pleas to all of these other offenses were provident and are not at issue before us. The appellant has been properly convicted for the criminal conduct of masquerading as someone he was not.

During the providence inquiry on the aggravated assault, the appellant told the military judge that he bound Seaman Avila's hands and feet and "caused" him to jump into deep water in a swimming pool for "drownproofing" exercises.[7] While the ap-

6. If an accused pleads guilty and during the providence inquiry his responses establish a different but closely-related offense having a similar maximum punishment, the guilty plea may be affirmed on review. *United States v. Hubbard*, 28 M.J. 203, 206 (C.M.A.1989); *United States v. Epps*, 25 M.J. 319, 323 (C.M.A.1987); *United States v. Felty*, 12 M.J. 438 (C.M.A.1982). Having concluded there is no substantial basis for rejecting the plea of guilty as to Charge III, we need not address whether the finding of guilty might be affirmed on the basis that the appellant's responses established a closely related offense, such as reckless endangerment. *See United States v. Woods*, 28 M.J. 318 (C.M.A.1989);

*United States v. Reyes*, 37 M.J. 579, 581 (N.M.C.M.R.), *petition denied*, 39 M.J. 39 (C.M.A. 1993); *cf. United States v. Sadler*, 29 M.J. 370, 375 (C.M.A.1990); *United States v. Irvin*, 21 M.J. 184, 189 n. 9 (C.M.A.1986); *United States v. White*, 39 M.J. 796, 808 n. 11 (N.M.C.M.R.1994); Md.Ann.Code art. 27, § 120 (1994).

7. Testimony at the trial established that "drownproofing" is a part of the training in the Basic Underwater Demolition/SEAL program in which individuals are tied at the hands and feet and then enter deep water. They are then expected to blow air out of their lungs to enable them to sink to the bottom, then push off the bottom to

pellant convinced Avila to enter the water, he did not push him in. He did admit lying to Avila about his true identity, and he stated that he was not "qualified" to teach the exercise. The following colloquy then took place:

> MJ: And under the circumstances, with you not being trained in drownproofing techniques, *are you satisfied in your own mind* that you created a means or force likely to cause him to drown?
>
> ACCUSED: Yes, sir.
>
> MJ: And that drowning would have produced grievous bodily harm?
>
> ACCUSED: Yes, sir.

Record at 22 (emphasis added).

During the sentencing proceeding, the defense elicited that the appellant remained with Avila in the water, stayed above him and watched him continuously with goggles on, and that he kept a life ring nearby. The evidence also showed that the appellant was a capable swimmer and a paramedic before entering the Marine Corps and had completed courses in scuba diving, water survival, and providing emergency medical care. Prosecution Ex. 1. In response to questions from trial defense counsel, Avila testified that the appellant practiced with him for a full day before the incident:

> Q. Now as far as the drownproofing, you guys just didn't jump right into that, did you, as far as training?
>
> A. We went to the pool; I think we practiced the 500–meter swim a few times, and then I asked about some of the further training.
>
> Q. So you had practiced you said the 500–meter swimming?
>
> A. Yes, ma'am.
>
> Q. You also practiced the 50–meter underwater?
>
> A. Yes, ma'am.
>
> Q. The eggbeaters?
>
> A. Eggbeaters; yes, ma'am.
>
> Q. So there were several other things that you had done. It wasn't just that you sent in to do the drownproofing; correct?

---

> A. No, ma'am.
>
> Q. In fact, didn't you actually practice for a full day before you did this, being tied up?
>
> A. Yes, ma'am.
>
> Q. And while you were doing this, anytime you were up at the surface, PFC Outhier was right there next to you; correct?
>
> A. In the immediate vicinity, yes, ma'am.
>
> Q. When you were down at the bottom of the pool, he was right above you, wasn't he?
>
> A. Most of the time, ma'am.
>
> Q. He was wearing goggles? He was watching what you were doing?
>
> A. Yes, ma'am.
>
> Q. And there was a life ring that was around all the time; correct?
>
> A. Yes, ma'am.
>
> DC: Nothing further.

Record at 42. Based on the providence inquiry alone, the military judge was not aware that the appellant remained in the water to safeguard Avila or of any of the other additional facts related above. But after hearing these facts during the sentencing hearing, the military judge did not reopen the providence inquiry.

An accused's acknowledgement of guilt based on a subjective belief that his conduct was criminal is insufficient to support his plea of guilty. His responses must establish factual circumstances that objectively establish his guilt. Rule for Courts–Martial 910(e); *United States v. Anzalone,* 41 M.J. 142 (C.M.A.1994); *United States v. Higgins,* 40 M.J. 67 (C.M.A.1994); *United States v. Schwabauer,* 37 M.J. 338 (C.M.A.1993); *United States v. Davenport,* 9 M.J. 364 (C.M.A.1980); *United States v. Care,* 18 C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969); *United States v. Dunning,* 40 M.J. 641 (N.M.C.M.R.1994); *United States v. Campos,* 37 M.J. 1110 (N.M.C.M.R.1993); *United States v. Evans,* 35 M.J. 754 (N.M.C.M.R.1992). If an accused merely re-

---

the surface for more air. The purpose of the exercise is to teach individuals to relax in the

water. Record at 39–40.

cites legal conclusions in response to general queries which are phrased to elicit those conclusions, an insufficient factual basis exists to support the guilty plea. *United States v. Terry*, 21 C.M.A. 442, 45 C.M.R. 216, 1972 WL 14158 (1972); *Dunning*, 40 M.J. at 645; *Campos*, 37 M.J. at 1112. Inconsistencies and apparent defenses must be resolved or the guilty pleas must be rejected by the military judge. *United States v. Newsome*, 35 M.J. 749, 751 (N.M.C.M.R.1992), *aff'd*, 38 M.J. 464 (C.M.A.1993). Where the possibility of a defense exists or an inconsistent matter is set up, the military judge has the duty to inquire into the circumstances and secure satisfactory disclaimers by the accused of the possible defense. *United States v. Prater*, 32 M.J. 433 (C.M.A.1991); *United States v. Lee*, 16 M.J. 278 (C.M.A.1983); *United States v. Thompson*, 21 C.M.A. 526, 45 C.M.R. 300, 1972 WL 14181 (1972). When the record of trial shows a substantial basis in law and fact to question the guilty plea, it must be rejected. *Prater*, 32 M.J. at 436.

One of the elements of the offense of assault with a means or force likely to produce death or serious bodily harm is that the weapon, means, or force was used in a manner *likely* to produce death or grievous bodily harm. Manual for Courts–Martial, United States, [MCM] 1984, Part IV, ¶ 54b(4)(a)(iv) (emphasis added). The word "likely" is defined in common English usage as something that is "probable," "apparently destined," or "to be expected." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1310 (1971); THE RANDOM HOUSE COLLEGE DICTIONARY 776 (Rev.1975).

Considering the facts in this record, I cannot conclude that the means or force used was "likely" to produce death or grievous bodily harm to Avila, even when his hands and feet were bound while in the pool. During the trial, numerous facts were elicited that should have prompted the military judge to reopen the providence inquiry. This inconsistency should have been resolved. *Newsome*, 35 M.J. at 751. In fact, Avila had a capable watchstander over him, a person who, while not honest about his identity, was indisputably a decent swimmer with medical training who had practiced extensively with

Avila for a full day before the incident. Further, the fact that nothing happened to Avila is some evidence that the "means or force" used here was not likely to cause death or grievous bodily harm. Drowning or grievous bodily harm was not probable, apparently destined, or expected in this case.

The majority cites *United States v. Joseph*, 37 M.J. 392 (C.M.A.1993), and *United States v. Johnson*, 30 M.J. 53 (C.M.A.), *cert. denied*, 498 U.S. 919, 111 S.Ct. 294, 112 L.Ed.2d 248 (1990), for the proposition that the harm need only be more than merely a fanciful, speculative, or remote possibility for a means to be "likely" to produce death or grievous bodily harm. Both of these cases involved the possible transmission of Human Immunodeficiency Virus [HIV]. The discussion of the meaning of "likely" was in the context of the transmission of HIV and not to other types of assault cases. It appears that the U.S. Court of Military Appeals was willing to so define a "means likely" to produce death or grievous bodily harm in these cases because of. the nature of the severe threat posed by the spread of acquired immune deficiency syndrome [AIDS] and the detrimental effect it could have on the armed forces and our nation's defense. As stated by a New York court, "[A]t no time in recent history has there been an issue capable of causing such anxiety and fear." *Anne D. v. Raymond D.*, 139 Misc.2d 718, 528 N.Y.S.2d 775 (1988).

It stands to reason why such cases are treated in a special category, for after the "touching," the accused has no control over the risk of infection, and the risk of death or grievous bodily injury lingers afterwards, both making it more likely that the person could be infected. But in the case at bar, the appellant remained present to exert control to prevent any harm to befall Avila, and after Avila left the water, any possible risk of harm ended, making it much less likely that he would suffer death or grievous bodily injury than a person exposed to HIV. Therefore, the standard announced in *Joseph* and *Johnson* defining a "means likely" should not be extended to this case.

The holding in this case adopts an unprecedented extension in the military law of as-

sault by applying such a low standard for the meaning of "a means or force likely" in a non-HIV aggravated assault scenario. Forty-two years ago, the Court of Military Appeals articulated the standard for determining the existence of a means or force likely to produce death or grievous bodily harm:

> In determining whether a particular weapon, means, or force is one likely to produce grievous bodily harm, the nature of the weapon, means, or force itself is of some importance, but is not conclusive. The crucial question is whether its use, under the circumstances of the case, is likely to result in death or grievous bodily harm....

Persuasive evidence upon this question is found in the nature of the means or force itself, the manner of its use, the parts of the body toward which it is directed, and where applicable, the extent of the injuries inflicted. *United States v. Vigil*, 3 C.M.A. 474, 476–77, 13 C.M.R. 30, 32–33, 1953 WL 2386 (1953); *see also* MCM, 1984, Part IV, ¶ 54c(4)(a)(ii) (defining a means or force likely as one where the natural and probable consequence of a particular use of any means or force would be death or grievous bodily harm). Neither *Joseph* nor *Johnson* expressly overruled the above test for non-HIV cases.

The appellant did admit to the military judge that he was not "qualified." From this admission, the appellant then concluded, in response to a question from the military judge, that he had created a means or force likely to cause Avila to drown. As I read the record, "qualified" may mean one or two things. Either the appellant was not adept enough in the water to save Avila in an emergency (as the majority interprets it), or it could mean only that he was not an officially certified instructor of the drownproofing exercise. Based on the appellant's actual swimming abilities, it appears the former meaning is simply not true and inconsistent, as I have already explained, with other evidence in the record. The latter meaning, that the appellant was not certified, would not add anything legally significant to the factual basis for the plea. The law demands that we examine whether the appellant *in fact* created a means likely to produce Avila's death or grievous bodily harm, and not rely only on his lack of official certifications.

In short, the proper focus in this case should not be on the appellant's official certifications, but rather on the his actual skills. The appellant's conclusion that he was not qualified, which was contradicted by the evidence of his swimming abilities, is inconsistent with his guilty plea. In light of the facts, we should also not rely on the appellant's conclusion that "in his mind" he was satisfied that the means or force was likely to produce death or grievous bodily harm. Consequently, the circumstances of this case illustrate a substantial basis in law and fact to reject the plea.

Secondly, if the appellant committed any crime beyond an assault consummated by a battery in this incident, it could only be one known in civilian jurisdictions as reckless endangerment. The genesis of this statutory crime was from a gap in the law. At common law, if a person created a risk of bodily harm to another by some reckless conduct, but did not intend to harm another, and the other person was unaware of the danger which threatened him, the accused committed no offense. 2 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 203 (14th ed. 1979). The offense of reckless endangerment was adopted by statute [8] in various jurisdictions to fill this gap. *Id.*; ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 850–51 (3d ed. 1982). Such legislation completes the pattern. If an accused acts recklessly causing another's death, he may be guilty of manslaughter or negligent homicide. If he acts recklessly causing another's injury, he may be guilty of battery. If he acts recklessly and only endangers another, he may be guilty of reckless endangerment. TORCIA, *supra*, § 203; MODEL PENAL CODE § 211.2 cmt. 2, *reprinted in ALI Model Penal Code*

---

8. *See, e.g.,* Md.Ann.Code art. 27, § 120; Wash. Rev.Code Ann., § 9A.36.050; Ill.Ann.Stat., 38 § 12–5(a); Me.Rev.Stat.Ann. tit. 17–A, § 211(1); Model Penal Code § 211.2 (1985) ("A person commits a misdemeanor if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."); *see also Minor v. State,* 326 Md. 436, 605 A.2d 138 (1992); *State v. O'Neal,* 23 Wash.App. 899, 600 P.2d 570 (1979).

*and Commentaries* [hereinafter *ALI Commentaries*] at 199–200 (1980).

Reckless endangerment itself has not been recognized as a violation of the UCMJ. In fact, just the opposite may be true. *See United States v. Irvin,* 21 M.J. 184, 188–89 (C.M.A.1986) (stating various violations of Colorado's child endangerment statute do not constitute assaults under military law). It has also been stated: "It has long been settled that there are no federal common law crimes; if Congress has not by statute made certain conduct criminal, it is not a federal crime." WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 2.1 (1986). It appears the only way reckless endangerment could possibly arise in a court-martial would be under Article 134, UCMJ, by using the Federal Assimilative Crimes Act, 18 U.S.C. § 13 (1988). However we are precluded from applying it as a closely-related offense under *United States v. Felty,* 12 M.J. 438 (C.M.A.1982), because we are not aware of the jurisdictional facts to warrant application of the Act.

Additionally, there is persuasive authority that bodily injury is a necessary element in an aggravated assault. In their discussion of the law, PERKINS & BOYCE, *supra,* refer to the Model Penal Code requirement for "bodily injury" in this offense. PERKINS & BOYCE, *supra,* at 181–82; MODEL PENAL CODE § 211.1(2) (1985); *see also ALI Commentaries,* § 211.1 cmt. 2 at 185; LAFAVE & SCOTT at § 7.15. The Model Penal Code defines bodily injury in an aggravated assault as some "physical pain, illness or physical impairment." MODEL PENAL CODE § 210.0(2). From these authorities, it appears that the substantive law of aggravated assault requires some bodily injury, at least in a battery-type aggravated assault.[9]

To find an aggravated assault in this case is certainly novel, and in my view, a significant expansion of the military law of assault that is not legally supportable. I have not found any other case involving an aggravated assault with such facts. Except for the HIV cases, I have also been unable to find any precedent for affirming an *aggravated* assault in a case of an assault of the consummated-battery variety where the victim was not injured.[10]

In this case, Avila suffered no bodily injury, as that term has been defined above. From the record before us, the drownproofing exercise was completed without a hitch. If reckless endangerment were an offense under the UCMJ, we could analyze this case under its framework. But without it, we are left to try to "shoehorn" this case into the existing military law of aggravated assault. However, it simply does not fit.

9. The majority correctly notes that MCM ¶ 54c(4)(a)(iv) states that "death or injury" are not required to effect an aggravated assault. This provision must be questioned in a battery-type aggravated assault in light of the legal authority to the contrary. It is noted that the previous edition of the MCM did not include the words "[d]eath or injury not required." *See,* MCM (1969 Rev.), ¶ 207c(1). It only stated that death or grievous bodily harm were not necessary in an aggravated assault. The 1984 edition added these words and thereby took the position that no injury at all was required. No legal authority was cited for this change. Moreover, we should also keep in mind that construction of substantive criminal law is within the province of the courts, and any apparent view to the contrary in the MCM is no barrier. *Anzalone,* at 147 n. 2.

10. In *United States v. Brantner,* 28 M.J. 941 (N.M.C.M.R.1989), this Court affirmed an aggravated assault where a Marine Corps recruiter deceived recruits into believing they were required to undergo certain medical procedures prior to enlisting. In addition to various other indecent assaults, he injected water into their buttocks and removed fluids from other very sensitive and private parts of their bodies with an unsterilized needle. The Court concluded such acts constituted a means likely to produce grievous bodily harm. 28 M.J. at 944. Citing MCM ¶ 54c(4)(a)(iv), the Court stated that an injury was not required for the offense. However, there would be an injury in that case under the Model Penal Code definition of "injury" because the insertion of the needle was obviously painful for the recruits. Consequently, the statement that an injury was not required was *dicta.*